Good morning. Thank you, Your Honor, and may it please the Court. Under Asahi and Beverly Hills Fan, the District Court erred when it found no jurisdiction. Mr. Luke, SKI claims in its discovery that although SELGARD was granted jurisdictional discovery, it, quote, failed to find a single product containing an SKI-accused separator in North Carolina. Is that true? What was not found was an individual separator, and the reason for that is these products are highly engineered, these separators are highly engineered, and the brand is not placed on the separator itself. So if the Court went to the affidavit of Dr. Murtha from my runway at Appendix 2038 to 2165, you can see a number of these products were tested, but none of them identified where the separator came from. They were consistent with... Well, you had the ability through discovery to determine that, did you not, by deposing the manufacturers? The manufacturers were not deposed, Your Honor. No, that wasn't my question. My question was, you had the ability to do that through discovery, did you not? Perhaps a deposition notice could have been served to that effect. I candidly wasn't part of the team that did that. I can't answer directly, but I can tell you that there is abundant... I'm sure you can answer. Okay. Well, a deposition notice certainly could have been served. Is there anything in the record that shows that SKI's products were actually in North Carolina? Yes, Your Honor. Circumstantially, if we go to the spreadsheets that were produced by SKI, and then we take the affidavit of Mr. Buckley from Apple, what we can show is that if you do the straight line mathematics, okay, the percentage of the market that SKI supplied to the battery manufacturers for Apple, and then you take Apple's shipments of products directly into the Western District of North Carolina, that math comes out on the order of 45,000 iPhones, iPads, and Macs. Is SKI the only supplier to Apple? SKI is a supplier to the battery manufacturers of Apple. Are they the only suppliers? No. I'm sorry. And does that affect that math? It does not. So let me just take the court through the math. What we did is if we go to, I can give the court an example at Appendix 1876. Well, at the end of the day, your math takes you to a probability, correct? The math, I would agree with that. It takes to a probability, yes. But there's no certainty. There's nothing in the record that shows with certainty that SKI products are in North Carolina. There's not a certainty, but we're not bound to show by a certainty. Our burden is to make a prima facie showing. And when I say 45,000 products, I'm only talking about Apple iPads, iPhones, and MacBooks that went into the Western District of North Carolina. CellGuard gets the benefit of the entire state of North Carolina. There was jurisdictional discovery, correct? That is correct. Doesn't that change the standard that we're looking at from a prima facie, from looking at the pleadings to now looking at a preponderance? It does not, your honor. Under this court's decision in electronics for imaging, even where there are affidavits, it remains a prima facie standard unless there is a hearing, and then it goes... Not affidavits. Jurisdictional discovery. No, your honor. I believe only a hearing, if we look at the electronics for imaging case and the PizzaNet case, if there's a hearing, it changes the preponderance of the evidence. But I believe we've shown by a preponderance of the evidence and met that standard in any event. Did you request a hearing in this case? It's not clear that a hearing was requested. There was an argument requested on reconsideration, but I don't believe either party requested an evidentiary hearing. Now, if I can follow up on that, I don't believe it's CellGuard's obligation to request that hearing. If we look at this court's opinion in Beverly Hills Fan and look at page 1563 to see what the allegation was... I'm thinking of the case of Peace, Nick. It seems to me that there was jurisdictional discovery there, no hearing, and the standard that was applied was a preponderance of the evidence. Well, the standard was applied was a preponderance. There was jurisdictional discovery, but I believe there was a hearing as well. But if I'm wrong about that, I'm wrong. But I can tell you, your honor, if you look at electronics for imaging, there the discussion is directly prima facie versus preponderance, and affidavits were submitted to the court, and the prima facie standard supporting the pleading allegations was applied. The point I'm making is that, and I'd just like to go back to it for a moment, and we're not talking about tens of thousands of products. We're talking about likely hundreds of thousands of products. And when I use the word likely, even the preponderance is a more likely than not standard. And so if I could just for a moment say what else could go into that. The iPhones and iPads and MacBooks that were identified here were only those sold through Apple stores and the Apple website in the Western District of North Carolina. Doesn't include Best Buy, doesn't include any of the phone manufacturers like phone service providers like AT&T and Verizon. And so when we talk about what's likely, the likely result is there are literally hundreds of thousands of these products that are in the forum state. And that's where, that's the measurement that we're going to apply for determining the stream of commerce. So I think by either the prima facie standard or the preponderance of the evidence standard, Celgard is more than adduced circumstantial evidence that supports the allegations that SKI's product is found within the forum state. And that's the first prong of personal jurisdiction. Are you though to assert circumstantial evidence when direct evidence was available and you failed to obtain it? Your Honor, the circumstantial evidence and direct evidence are entitled to the same weight. And the decision of how far to go with discovery is one that has to be made in every case. There's a burden. Entitled to weight, but isn't there an inference from your failure to obtain direct evidence that it would have been adverse to you? Well, there might be an inference if it's shown that that evidence was available, but... I just asked you that. Okay. So under McIntyre... You told me that you could have issued subpoenas. We could have issued subpoenas. We could have attempted to take discovery of foreign manufacturers. Yes. I mean, whether we would have been successful, I don't know. I mean, the problem there is that we have the same argument of personal jurisdiction. The discovery that we got was written discovery and that's what was submitted to the court. And I think if you look at that discovery in an objective light and you measure it against either the prima facie standard or the preponderance of the evidence standard, it shows that there is likely tens of thousands, if not hundreds of thousands of these separators in North Carolina. I'm not too sure that the law is clear on that point. That's why I've been asking you these questions. Sure. And so you may want to focus on that. And I've been trying to focus your arguments on that as well, because I do think it makes a difference when you're arguing mathematical probabilities. I think the standard between prima facie and a preponderance are oceans apart. Okay. Well, let's talk about from the preponderance point of view. And I'd like to go to the statement that's in the McIntyre case from the Supreme Court that decisions on personal jurisdiction need to be made based upon the developing area of the law in a common law fashion as we do with other things. And it has to take into account the economic realities of the marketplace. The economic reality of the marketplace here is that the separators are manufactured in Korea, sold to battery manufacturers in China, Korea, and elsewhere in Asia, and then are incorporated into the Apple phones. I'm not certain that anyone could say for particular this separator material came from this particular manufacturer. At what stage, then, are you relying on Beverly Hills Fan for jurisdiction of the manufacturer, the foreign manufacturer? Well, in particular, what Beverly Hills Fan looks to is the additional conduct directed to the forum state in the sense of taking advantage of ongoing and continuous use of distribution channels that are going to place the product in the forum state. Well, in that case, there was no dispute that the product was at hand. The question was tracing the chains. Is that right? That is correct. And looking at the additional conduct. And here, the evidence that we have is the evidence of probability through taking the percentages of separator material, applying it to the number of products, confirming it with tests that show that it is consistent, although it doesn't show directly, and the fact that they don't deny. And then the pleading standard that we're entitled to is the resolution of inferences in favor of cell guard here. And that's plainly set forth in Beverly Hills Fan and a number of other cases. So where is the distinction as to the concession of jurisdiction in New York? In New York, in my view, that's reverse forum shopping, Your Honor. If we show that we have the stream of commerce element satisfied and we have the additional purposeful conduct directed to the forum state satisfied, as I believe we do under Beverly Hills Fan, and then they don't carry their burden on reasonableness, we're entitled to our forum state. And a defendant shouldn't be permitted to simply say... Why wouldn't your argument as to the probabilities and this mathematical theory that you lay out, why doesn't that invoke 42K? Or you can't identify any particular market that the product goes to. So presumably under your equation, it can go to any of the 50 states. Correct. And okay, so that now you're invoking national type jurisdiction and you have one forum that says, you can, I'm willing to be sued in New York and that forum says, you can bring those type of lawsuits here. We're not invoking national jurisdiction, Your Honor. And I've looked to two district court decisions that I think make plain exactly what's taking place here. One is Kernias from the District of Maryland. The other is Cole Morgan from the Western District of Virginia. Both of those cases involved manufacturers taking advantage of ongoing and continuous distribution networks. And the fact that those products would end up at Best Buy or other places and they didn't know the specific locations was not an excuse that would excuse them from personal jurisdiction. So for example, in Cole Morgan, the district court statement was, you cannot take an ostrich-like stance. And if you look at what took place here, SKI actively worked with Apple to try to deepen its penetration of Apple's products in the United States. It's not necessary under Beverly Hills Fan to specifically target the specific state. The manufacturer there did not target the specific state. That was a manufacturer in China selling to a U.S. distributor who in turn had a relationship. SKI is not selling directly to Apple in this case, correct? That is correct. I mean, it sells to OEMs and it's the OEMs that are supplying the power sources to Apple. That is correct. Isn't that different from the cases that you cite? I think it is a little bit different from Beverly Hills Fan. But as McIntyre tells us, we have to take in the economic realities of the marketplace. And it's still a two-prong test. Are the products here? And was there additional conduct directed to the forum state in the sense of using distribution channels? And if I could, just take the court for a moment to the appendix at A1642. It shows some of the efforts that SKI took to increase its sales of its product through Apple. And that 1642, this is a marketing document that came out of SKI's files in the jurisdictional discovery. And if we go two pages in this presentation to A1647, you can see a document entitled Cooperation Between Apple and SKI. And so, and I would just point to, you know, two things. SKI wishes to create and provide values for Apple. That's in the purple box along the right-hand side. And the timeline shows during the relevant period of alleged infringement, SKI's activities to try to deepen its relationship with Apple and increase its sales. Now, that's sales worldwide, but that includes the US. And if we look further in the appendix, at A2236, this also is a document that came out of SKI's files during the discovery. A couple of things are made plain. I just point to the statement above the table, Apple's market position. It has an analysis of their market position. And then below it, it says Apple is the biggest consumer of separation films, which consumed 10% or more of the world's supply. And so, as I look at this, and I recognize the issue with trying to approve the stream of commerce through statistics. But when we look at the scale of the statistics here, we look at SKI's conduct in trying to increase its distribution through Apple's sales channels, which indisputably end up in North Carolina. And then we take the difference that you raised, Your Honor, with respect to Beverly Hills Fan. I think the better rule in today's economic reality is if you are a foreign competitor and you are actively taking steps to compete in the 50 states of the United States, then you ought, in fairness, be subject to personal jurisdiction and to answer for torts within those states. Okay. Thank you. Thank you, Your Honor. Now, Mr. Jakes, we brought up some new issues on our questions. Do you want a minute or two to respond? No, Your Honor. I think I'm prepared. Okay. Yes. And good morning. May it please the Court. The facts here are fairly simple. SK does not have offices, employees, contacts with North Carolina. It doesn't ship products into North Carolina. And after extensive jurisdictional discovery, CellGuard still did not find and identify a single product that had an SK separator. Did any of the parties request a hearing? I don't believe either side requested a hearing. That's what I understand from the record. And, Your Honor, that does go to the evidentiary standard. But as I understand the Peaceneck case, there was no evidentiary hearing in that case as well because the parties either requested or it didn't take place. But there was extensive jurisdictional discovery. And that's what we have here. I don't think that CellGuard should be able to somehow manipulate the standard by taking extensive jurisdictional discovery and then saying, well, we don't want a hearing so we don't have to. Would a preponderance of evidence standard take into account statistical evidence? Well, two answers to that, Your Honor. The statistical evidence here is not complete. For one thing, it assumes that there was an even distribution of all of these products that somehow a particular batch didn't go to a particular location. No evidence of that. So you can't assume that they were all evenly distributed and that the same number ended up in every state. It's just not there. Second, there's just... For every country for that matter. They're distributed worldwide. Yes, Your Honor. As recognized, SKI is only one of the suppliers to the battery manufacturers. And the battery manufacturers are only one of the suppliers to the CE manufacturers. So you have a very complicated supply chain. And CellGuard did have the opportunity to take discovery and wasn't able to establish that. But for the foreign origin products of national distribution, ultimately in the United States, what's the difference between New York and North Carolina? Well, in New York, as I understand, SKI did have an employee there and did have actually some contacts. The district court also found that there was jurisdiction in California based on the fact that SKI had sent samples there. Well, I'd add that to my question. What's the difference? Well, the difference is that SKI actually has contacts with those locations. What do you mean by contacts? Companies? In the case of California, there were samples that were sent into the state to try to get customers. That did not happen in North Carolina. CellGuard alleged that that had happened in their complaint. It turned out to be not true. But with California, the judges did find that there were contacts, deliberate contacts with that state and also accepted that... The concession was for New York. That's right. There was a concession for New York. Is that held for New York? New York has jurisdiction as well. Yes, but there were contacts. And the contact is, you said, an employee? That's what I understand. Yes. And so what we have now is... An employee, but we're talking about the presence of the product in the state. Is that right? In the district? I don't think there's... Is that the issue? I'm sorry, Your Honor. I don't think there's any concession that these particular products made by SKI were found in those states. There were other contacts associated with the sale and marketing of separator film, which is the accused product ultimately. But I don't think there's any concession that any of the consumer electronic products in those states, whether it's North Carolina or New York or California, contain SKI separators. I don't think there's any concession at all. And on that point, Selgar repeats many times in its reply brief that SKI somehow failed to deny that products were found in North Carolina. We don't know. We said we don't know for an individual product because our customers don't tell us. This is your client, right? What's that? This is your client? Yeah. You don't know? We don't know. The customers don't tell us that. That's very closely guarded information. That's important trade secret information. They sell... SKI sells... Of its trade secret information could Selgar have obtained that information? Well, it certainly could have tried. But certainly SKI doesn't know that. And when we have insufficient knowledge or information... What trade secret information is this? OEMs or let's say the retailer distributor like Apple? I think it's probably both. These kinds of things are not generally widely known. And certainly SKI doesn't know it. The SKI's representative was taken and he said multiple times, we don't know. We make guesses. We try to figure out what's going on in the market and we guess, but we don't know. We don't even know whether or not a particular battery manufacturer coats our films. And that has to actually be done before there can even be an allegation of infringement. So there's no knowledge or information and that's the equivalent to a denial. Are all these membranes the same? I mean, there's no identifying mark or design or shape or anything that would distinguish them? Your Honor, I don't know how close they are. I know that they are manufactured often to the customer's own particular standards. So there may be differences, but for the ultimate end product, certainly SKI doesn't know. And to continue with your question, Your Honor, about probability, let's assume that there is some probability that a product ended up in North Carolina. That's still not enough. If you go back to the whole stream of commerce theory originating in a worldwide Volkswagen, the court even said there, the mere likelihood that a product will find its way into the form state, it's not enough. You have to have some expectation that you'll be sued in that state. There's no established distribution channel that SKI takes advantage of. They sell to the battery manufacturers who are also outside the US. And in that respect, there's certainly some uncertainty in the law with Asahi, but I don't think the court has to reach that because even under any standard, without a product being found in North Carolina, the stream of commerce theory has to fail. Unless Your Honor has any more questions, I think. Okay. Thank you, Mr. Jakes. I'll make just a few brief points. First of all, to your question regarding Pizzanick, Your Honor, I looked up the statement you were referring to at page 1334. There, the parties conducted discovery related to jurisdictional issues and told the district court that no evidentiary hearing was necessary with respect to the issue of personal jurisdiction because the jurisdictional facts were undisputed. And there, the court did apply the preponderance of evidence standard under those circumstances. And we can also look to electronics for imaging where you have affidavits like here. So applying what you just read to this case, in this case, there was no jurisdictional hearing. The parties didn't request it. But I guess you're saying that the facts are disputed here. They are undisputed here. And that's the difference between this case and Pizzanick? Yes, Your Honor. But I would also say that under the preponderance, it's apparent by looking at this record that it is extremely difficult, if not impossible, to identify which film is in the battery. And that's the reality of this marketplace because Apple wants its materials made to a high specification. And so I'm just going to go back to the statistical aspect for a second and just say what's more likely... Let me ask you, would Silverguard be able to determine whether its own membranes are being sold in North Carolina? I believe they would, but I'm not certain if they would be able to do it by inspecting the membrane itself. Perhaps they could. I can't answer the question with enough certainty for the court to rely on it. Judge Rayna asked you whether the facts were disputed or undisputed in your case. I thought you said they are undisputed here. The facts are undisputed. The inferences from the facts are not. And I believe under Beverly Hills Fan at... So this case is exactly like Piecznik, then? It's very similar, yes. So if we take a look at it from that perspective, we're looking at a preponderance standard. You could apply the preponderance standard of Piecznik or you could apply the prima facie standard of electronics for imaging. I'm saying we meet our burden under either one. And I think that's an open question for the court to decide. What, you know, what electronics for imaging says is another equally direct statement that if there is no evidentiary hearing, then a prima facie showing is all that's required. If it is a preponderance of evidence standard and your evidence is circumstantial in nature, you're arguing probabilities, then what is it that we review here? The strength of your economic theory, the amount of probabilities, the percentage? I think you go to Beverly Hills Fan where it says the allegations are that defendants purposefully shipped the accused van into Virginia through established distribution channel. The cause of action for patent infringement is alleged to arise out of these activities. No more is usually required. We have stepped further and given an evidentiary basis for the allegation. One that is, you know, I acknowledge proved circumstantially, but circumstantial evidence is entitled under the rules of evidence to the same weight as direct evidence. But I don't understand if you can't establish by evidence or by chemical analysis or any other way, whether this product is present any place, then how, even if you were to cross this threshold of jurisdiction of the foreign producer, how can you establish your case? Well, we will have to be able to dig down into those details and trace the specific product shipments, but we would be entitled to. You could have done that in your jurisdictional discovery. Acknowledged, Your Honor. All right. Okay, thank you. I have nothing further. Okay, thank you, Mr. Luck, Mr. Jake. Case is taken under submission.